The first case on the call of the docket for this morning is Agenda No. 9, No. 125219, Alex Dameron v. Mercy Hospital and Medical Center. Mr. Grand and Mr. Chembers, you both will be speaking or just you, just Mr. Grand? Your Honor, I will present argument and then Mr. Chembers will present the vote. Very good. All right. Thank you. Thank you, Chief Justice Burke. Good morning. Karen DeGrand on behalf of the Defendants Appellants, Mercy Hospital and Medical Center, Dr. Clark White, Dr. Hampton, and Dr. Harvey. Mr. Chembers is with me today and represents Patricia Courtney, and we both will argue jointly on behalf of all of the defendants. May it please the Court. Counsel, our position is that the trial court correctly ordered plaintiff to produce her expert neurologist records regarding his testing of the plaintiff. That the plaintiff did not meet her burden of proving that the material is privileged. And I think the logical way to address this is to break the Preston materials down into two sections. One is the EMG testing and the other is the conclusions and interpretation of that testing. But our position is that both are not privileged. First is the EMG results. Under Illinois law, a plaintiff seeking to recover from personal injuries cannot withhold medical tests by test results, I should say, by re-designating a physician who conducted the testing as a Rule 201B3 consultant. That is to say, even as a consultant, even if the Court were to permit that, the test results themselves should be produced. These are relevant, material, evidentiary facts regarding an essential element of plaintiff's medical malpractice claim, that the damages that she claimed were caused by the alleged malpractice. Actually, in this particular case, the facts being withheld are not just relevant. It essentially is plaintiff's entire damage claim. She alleges permanent nerve injury as a result of the alleged malpractice. Plaintiff criticizes the defense for trying to explain and illustrate with scholarly material exactly what data is at the heart of this discovery dispute. It seems ironic, quite frankly, because it is plaintiff, the party who is asserting privilege, who should have provided this explanation to the Court. Electromyography, EMG, provides objective information about nerve and muscle condition. And EMG uses electrodes to stimulate the patient's muscles and nerves, and the test reveals whether a nerve or a collection of nerves has any abnormalities. Electric stickers are affixed to the patient's skin, and a neurologist or a technician may insert needle electrodes. The test measures electrical currents at the anatomical site when the muscle is at rest, and also when the muscle is contracted, to learn about the health of the muscle and the health of the nerves that control the muscles. Counsel, if the plaintiff had designated this doctor as a consultant initially, would the argument still be the same? I would still maintain, yes, Your Honor, that the data should be, the test results should be produced under the request for all testing of the plaintiff. Yes, because, again, this is evidentiary material, factual material, not material that is subject to the mental processes of the consultant. And, again, the material that is generated by these tests is numerical data. Sometimes it's in the form of a graph or a table, and then once that data is compiled or is released, then the expert, in this case a neurologist, Dr. Preston, can interpret the numbers and say what they mean. This Court's precedent tells us that EMG test results must be produced because the information constitutes relevant and material evidentiary data and is, because of that, is not work product. It does not disclose the expert's mental processes. So as Justice Garmon requests or asks, even if the Court were to accept the premise that Dr. Preston could be pulled back into the shadows and transformed from a 213F3 to a 201B3, and that's another premise that we reject, she cannot accurately characterize the test result as work product. There's no shaping process or mental impressions involved with this data. I would liken the EMG and nerve conduction study results to providing electrical evidence on whether a nerve injury exists. And to use the term of the appellate court, this is concrete information. This is the conclusion the appellate court should have reached based on controlling precedent of this court and appellate precedent as well. The courts' Monier decision addressed the question of work product versus concrete factual material that always is subject to disclosure in the truth-seeking process. The Monier court back in 1966 rejected the broad Federal definition of work product and what this court called the huge jungle of conflicting district court decisions deciphering the good cause exception to the expansive Federal definition of work product. Counsel, do you agree that there are times when the type of test that's ordered and how that test is conducted would shed some light on the expert's thought process? Well, that, it might shed some, but not to the point that it's transformed from factual data that is discoverable into protected work product. And that exact issue was addressed in the Shields case. In the case of the first district, which involved a surveillance video. And the defendant resisted producing that video on the basis that it was prepared by a consultant. It was not, there was no question about redesignation or anything of that nature. Prepared by a consultant. But the court reasoned that it's really not, that it's still essentially is factual information that, like the information we're talking about in this case, goes to the question of the plaintiff's damages. And the fact that there are some subtleties that involve, in that case the consultant was the videographer, the way the videographer, the angles and so forth of the video, that did not mean more than taking a statement is the work product of someone who takes the statement and asks the question, the verbatim statement of a witness. It still is factual evidentiary material and not work product. The appellate court did not account for the nature of the testing in reversing the trial court's discovery order. The court said that the Preston records are not before us, so we can't conclude that purely concrete material was contained in the file. Maybe there was, maybe there wasn't, and maybe there were thought processes involved. But I have to, I have to say that that was an error, because the plaintiff had the burden of proving that there was an applicable privilege, as a proponent of the privilege. And the plaintiff had the burden to present to the appellate court a basis for concluding that the trial court had erred. This was not, this was not a presumption that it should have gone against the defense as the appellee. It should have gone against the plaintiff. So that's another aspect of the, of the appellate court that, appellate court's reasoning that I think deserves correction by this Court. And the appellate court also distinguished the Shields' decision without having a basis and found that the Costa decision of the Fifth District was more applicable. But in Costa, which was an asbestos wrongful death case, the Fifth District didn't address the issue that faced the appellate court and now this Court here. Is the information work product, or is it concrete factual material? The parties speaking the material in the Costa case did not challenge that it was work product. The Costa plaintiff, the party in Costa attempting to obtain the information conceded that it was work product. As for this redesignation issue, the discussion about work product and testing results is academic, of course, if this Court's discovery rules do not permit the plaintiff to backpedal after disclosing Dr. Preston as a Rule 213F3 testifying expert. And neither his opinions nor the testing data would be protected in that instance. And there's, there's no authority that has been cited that permits redesignation. The Taylor case that, of this Court, that plaintiff cited and that the appellate court relied on didn't involve redesignation. It involved abandoning an expert. Well, that's, that's a far cry from saying that I'm going to redesignate this expert and now keep his opinions and, and even factual evidentiary material from the other side. That didn't happen in Taylor. It was a completely different issue in Taylor. It was that the, whether the, the expert in Taylor was the agent of the parties that had originally disclosed and was seeking to abandon him. That's not our issue here. So I don't, I don't believe that Taylor provides a basis for the appellate court's ruling or the plaintiff's position. And the Federal And so if we, if we agree with you on the innate, you look to the nature of the request rather than the redesignation, do we need to reach the redesignation issue? For, for the purposes of Dr. Preston's report, for the purposes of Dr. Preston's conclusions, it's, it's hard to know because there's no, there's no actual description anywhere in the record of what Dr. Preston's file contains. So that, you know, that's, that's kind of a fundamental problem here. I, to the extent that the plaintiff has described Dr. Preston as conducting the EMG study and generating test results, well, we know that that, just because we know what an EMG study is, we know what that means. But I don't, I don't honestly know exactly what's in that file. But, yes, to the extent that there is, that the report contains the opinions as to that aspect, then the redesignation issue is in play. I don't believe it is in, in play as to the test data itself, Your Honor. And why did the, do we know why the trial court denied the motion to redesignate? Well, there's no, there's no transcript because there was no court reporter at the initial CMC when the, when the issue came up. And then the plaintiff's original motion to redesignate and then plaintiff's motion to reconsider. I mean, I, you know, the, the judge did not accept the plaintiff's position, but there's nothing in the record that, that would give this Court the specifics of Judge Komolinski's reasoning. And I don't believe that the federal authorities, that plaintiff's sites are of any, of any help to this Court on this issue. Looking, looking at federal authorities and interpreting the Illinois rules of discovery is not something that has been undertaken in the context of defining work product. Certainly the Monier case made that clear, that it, this Court did not intend to, to go that wide on a description or on a definition of work product. And that same type of analysis is reflected in the, in the Shields case. Now, to the extent that the plaintiff has cited this SEC v. Konig case that talks about redesignation, I, I think that case displays a different approach to expert disclosure than what is mandated by this Court's rules, in that Judge Easterbrook had no problem with the plaintiff, the SEC, calling the defendant's expert at trial without any notice to the plaintiff, or rather to the, to the defendant. And because it was a matter of whether it was confidential or not. But that, that type of, of calling of an expert without notice to the other side is, is not how we are required, we as litigants are required under this Court's rules to proceed. If there were a case that justified pulling the hook on a disclosed 213 F3 expert, I don't think this is that case, from what we do know of the record. Two months after plaintiff disclosed Dr. Preston, two months after the EMG testing, according to that disclosure, without any explanation, plaintiff sent an e-mail to the defense saying, we're not going, we're withdrawing Dr. Preston. And then that same day we went to court, there was the discussion before Judge Gomelinsky, and Judge Gomelinsky said, file a motion, give me some authority if this is what you're going to try to do. And in that motion, plaintiff said that there was an inadvertent disclosure without giving any explanation or details. That motion was denied, and the court ordered plaintiff to produce Dr. Preston's results in his file, and then there was a motion to reconsider. And in the motion to reconsider, plaintiff retracted the inadvertent assertion, inadvertent disclosure assertion concerning Judge or Dr. Preston as a 213 F3, and said, he is a 213 F3, he's not a treater. And to the extent that we ever gave that impression, that was inadvertent. So we've got this inconsistency here, and I think that what that suggests in the case is a signal that there was really no reason for the switch other than the receipt of bad news from Dr. Preston. The word this Court uses for that type of discovery conduct is gamesmanship, and my understanding is that the Court does not approve of it when it comes to expert witness discovery in Illinois. The plaintiff says many times in the plaintiff's response, defendants should have just asked for Rule 215 IME, but I can tell the Court why we didn't. As discovery progressed into the expert phase, plaintiff disclosed that she would have Dr. Preston conduct the testing on this, one of the two focal points of plaintiff's case. So given that plaintiffs had disclosed that Dr. Preston was going to do an EMG study, we would then just take the results, supply those results to our expert, and our expert would then discuss that with them and opine about the plaintiff's condition based on those results as of June 1, 2017. Until we had the opportunity to review those results, there really was no reason why we would request a 215 exam. So that's where it stood, and then we were successful in having the plaintiff order to produce the results and then proceed in the appellate court, and now we're here. And we're here and it's 2020, so if we return to the circuit court now and request an examination, if we were required to do that, that would tell us nothing about Ms. Dameron's condition on June 1, 2017. So, you know, there's no opportunity to obtain those facts other than to obtain this specific EMG test result. So the Court has no further questions. On behalf of the defendants, we ask the Court to reverse the appellate court's order and to reinstate the order directing plaintiff to produce Dr. Preston's file or, in the alternative, at a minimum, on remand we'd ask for production of the testing data after redaction of only the mental processes of Dr. Preston. Thank you very much. Thank you, Mr. Pat. Ms. Harbeck? Good morning. May it please the Court, Counsel, Your Honors, my name is Emily Harbeck and I represent the plaintiff appellee, Alexis Dameron, in this matter. Your Honors, this case presents a simple problem with a simple solution. The issue is whether Illinois wants to conform itself with the majority of Federal districts on the issue of whether a party can redesignate a retained expert into a non-testifying consultant whose work product is privileged absent exceptional circumstances. The answer is overwhelmingly yes. Therefore, this Court should affirm the appellate court for the following two reasons. First, the appellate court correctly applied the majority Federal precedent to interpret our own Supreme Court corresponding consultant work product privilege found in Illinois Supreme Court Rule 201b3. And second, defendants failed to meet their burden to establish exceptional circumstances that would entitle them to Dr. Preston's records. Your Honors, at the outset, there was a discrepancy in the brief between the parties whether de novo review applies. We argue that de novo review does apply, as this Court has held in favor of the discovery privilege is viewed de novo, as well as any proceedings in conjunction with that ruling, which would be the contempt proceedings that took place below. This matter also presents an issue of first impression in Illinois, which also grants de novo review for this subject matter. Now, defendants would have this Court force production of a non-testifying consultant's records. Not only do they seek the EMG report, which does contain Dr. Preston's mental impressions and opinions, they seek any records regarding such EMG study, which would include the communications between Plaintiff's Office and Dr. Preston, as well as any records he may have reviewed. Now, under Illinois Rule 201b3, these records of a non-testifying consultant are privileged absent the exceptional circumstances test. Now, to give a history, the committee notes for Rule 201b3 clearly acknowledge that discovery of a non-testifying consultant is only to be had in exceptional and extraordinary cases. This case does not represent such a case. The defendants have failed to show that they were prejudiced in any way by the withdrawal of Dr. Preston as a testifying expert. Now, under Rule 213f3, Plaintiff originally disclosed Dr. Preston as someone who would be testifying. However, in the disclosure itself, it was more of a broad disclosure stating that testing was to be done on the plaintiff and that findings and opinions would be supplemented after the test had been done. At the time of the disclosure, the test had not been completed. So in the prompt withdrawal of Dr. Preston as a testifying expert into a consulting expert, the plaintiff never disclosed his opinions, never disclosed what his testimony would be, and never disclosed the test results and opinions that were found in his report. Therefore, there's no detrimental reliance by the defendants on this information. As this Court has held in Taylor v. Coley, a party can abandon a retained expert witness as long as it's a timely withdrawal and there's no prejudice to the other side. Here, defendant didn't even argue that they'd be prejudiced in any way by the withdrawal of this testifying expert. It's the burden of the plaintiff to produce the best evidence possible to prove her case. And the plaintiff, as has been held for 30 years in the Federal district courts, a plaintiff does have the ability to change their mind about who they would like to testify at trial. And although this particular issue that was not been decided in any Illinois court, Illinois precedent does establish that this redesignation is possible under the discovery rules. Now, Rule 201b-3 was crafted based on the corresponding Federal rule, which was 26b-4b formally, now Rule 26b-4d. The wording of both rules distinguishes between a testifying expert and a plaintiff testifying expert, one who will provide testimony at trial, and a consulting expert who is not to be called at trial. Both rules distinct, make this distinction and say that there's a consultant work product privilege that protects any discovery of this, of this particular expert, such as their identity, their opinions, and their work product, which Dr. Preston's EMG report is clearly work product. Now, the defendant stated and put in their appendixes to their briefs some scholarly articles which are unauthenticated, undated EMG samples, if you will, and we asked in our brief that those be stricken, as they were never part of the record and never reviewed or relied upon by the appellate court or the trial court. They also would have this court assume that these reports are similar to the report that Dr. Preston produced, which is simply not true. The report, the EMG, is a two-part test. It's an EMG to test the muscle function, as well as the nerve conduction, to see if there's any damage. Now, these tests are not completely objective data, as the defendant would have you believe. The numbers that are generated are from a test that Dr. Preston performed himself. He chose the location of the electrodes on the plaintiff's body. He chose where and when and how the test would be conducted. This necessarily shows his thought processes, and also he interpreted what those results were and put his conclusions and impressions based on his evaluation of the plaintiff. He conducted not only a physical examination, but he interviewed the plaintiff as well. And based on his examinations, found that there was no damage to the plaintiff's body. Now, this is not the kind of report that the defense would have you recognize in both Shields and Neuschwanger. The appellate court correctly and squarely rejected that argument. The surveillance tapes in both Shields and Neuschwanger are simply recording factual evidence and data. They do not reveal the mental processes of the expert, the consultant, in any way. It is merely a depiction of a factual event. That is completely different than the EMG study we have here. That report clearly puts Dr. Preston's impressions based on his own review of the plaintiff and his own examination at issue. And that's the exact type of data that is protected work product in Illinois. Now, the court has held that where there are no Illinois cases on point, the court is able to look to the corresponding discovery rules of the Federal courts on issues that they have addressed, similar to our discovery issues. Now, in Federal court, prior to 2009, the majority view was that a retained plaintiff should be able to testify, and that a retained testifying expert could be withdrawn and redesignated into a consultant whose work product is shielded from further discovery, absent exceptional circumstances. And that is displayed in the Northern District of Illinois case from 1991, Ross v. Burlington. And the logic behind that reasoning is that a plaintiff is entitled to change their mind about who is to testify at trial. And that's a completely fair rule. It is the plaintiff's burden to produce the best evidence to prove their case. Sotomayor, how do you respond to the argument or suggestion that it is an attempt to hide unfavorable evidence, and all it will do is encourage parties in the future to claim when they get bad results, that their prior disclosure was inadvertent and essentially it would encourage concealing negative information? How do you respond to that? Well, first, Your Honor, this isn't, as defendants would have, you have tactical gamesmanship. The plaintiff used and followed the discovery rules of 213F3 and 201B3 correctly in order to shield Dr. Preston from further discovery as a consultant. We have to look at the purpose for which Dr. Preston was retained. And he was specially employed for litigation and in preparation for trial. Now, Dr. Preston's consulting or consultation with plaintiff, had he not been disclosed as an F3 initially, he would have been found squarely within 201B3, and the results of any testing he may have done, any opinions or records he would have reviewed, would have been shielded from discovery in the first place. So there is no tactical gamesmanship. The only difference between a 213F3 expert and a 201B3 consultant is the intention to testify at trial. So essentially, when Dr. Preston was originally disclosed as an F3, he never was fully disclosed, because we did not provide his opinions, or his report, before withdrawing him as a testifying expert. Now, this distinction is huge, because if Dr. Preston's report and opinions were disclosed prior to disclosure, obviously he would be subject to a deposition, and it would be essentially the cats out of the bag. However, because we timely and promptly withdrew him under the auspices of Taylor v. Coley, and redesignated him as allowed by the Federal courts, there was no detrimental reliance or prejudice to the defendants. And he fell squarely in the ambit and protections of 201B3. Now, in the Federal context, as I stated before, this redesignation was allowed for years. However, in 2009, the rule changed. In the Seventh Circuit case, SEC v. Koenig, now, this rule narrowed the rule slightly in that once the report is disclosed, that ends the opportunity to claim confidentiality, which is a fair rule, because, as I mentioned, if you disclose an expert and give what their opinions are going to be and what their report contains, you can't then go back and switch them to a non-testifying consultant to shield them from a deposition. That would be tactical gamesmanship. Here, without producing his report and claiming privilege, and without having his opinions disclosed, there was no tactical gamesmanship. He was never disclosed fully as a 213F3 expert. He was fully within the ambit and protections of Rule 201B3 once he was withdrawn. Now, in SEC v. Koenig, it's the report itself being disclosed that ends the confidentiality. So here, because Dr. Koenig or, I'm sorry, Dr. Preston's report was never disclosed to the defendants or his opinions disclosed, it was fair game to withdraw him in a timely manner under the auspices of Taylor v. Coley, where you can abandon a retained witness. But, counsel, do you agree that the plaintiff had the report before that? Yes. We did have the report. But, however, as the Federal courts have held, a plaintiff is entitled to change their mind about what evidence and what testifying experts will be presented at trial, since it is the plaintiff's burden to do so. And as, you know, as we withdrew him as a witness, that means that the evidence was unfavorable to plaintiff. Plaintiff doesn't need to give a reason why they're not producing certain evidence or putting forth certain witnesses. That's their own trial strategy or our own trial strategy. It doesn't need to be disclosed to defendants. So in withdrawing Dr. Preston, that happens all the time in litigation where an expert is withdrawn, as Taylor v. Coley has stated. Now, this Court should follow the precedent that was set by the Federal courts under the corresponding rule. Now, defendants here have failed to show and meet their burden of exceptional circumstances. Now, as anticipated by the committee notes for Rule 201b3, discovery of a consultant is to only be had in extraordinary cases. That's why they established or this Court established the exceptional circumstances test. Now, defendants could have gotten the same results, facts or opinions as Dr. Preston if they requested, for example, a Rule 215 examination, where they could have found the same facts or opinions. Now, both the corresponding Federal rule and Rule 201b3 state some examples of what exceptional circumstances are. One is where an expert is the only one in his field and has been retained by another party, so the adversary is not able to retain their own expert on the matter. That clearly doesn't exist here. Dr. Preston was a neurologist. There's many neurologists in the Chicago area that defense could retain to obtain facts and opinions on the same subject matter. So does the EMG contain objective data? We would argue that it's subjective findings and interpretations that can't be divorced from one another. The example is the Costa v. Dresser case. In that case, although there wasn't an issue of re-designation, the issue was that the plaintiff wanted the defendant's consulting expert's testing results on a tissue sample of the plaintiff's decedent's lung. It was a mesothelioma case. They wanted not only the identity of that consultant, they wanted his opinions, and they wanted his testing results on the tissue sample. The Court found that this was consultant work product and that the plaintiff failed to show exceptional circumstances. This is exactly analogous to the situation we have here. A tissue testing result is similar to an EMG study and nerve conduction study and should be treated in the same way as consultant work product, only to be disclosed if there are exceptional circumstances, which the defense has failed to argue and failed to show. Therefore, they are just not entitled to these records. The tissue testing results found to be work product in Costa are far more similar than the surveillance videotapes that were found to be non-work product in the Shields case, and the appellate court held as much. The fact that those cases are factually inopposite and should not be followed by this Court, we urge the decision in Costa to be followed. Now, Your Honors, the last issue is whether or not a remand for an in-camera inspection is appropriate. Now, defendants asked this Court for the very first time for an in-camera inspection. This was never asked for by defendants at the trial level. It was never asked for at the appellate level. And now they want an in-camera inspection and a remand, which would only kick the can down the road. We would be in the exact same spot on appeal because the ultimate issue that needs to be decided is whether or not redesignation of a testifying expert can be had into a non-testifying consultant whose work product is privileged absent exceptional circumstances, which the appellate court, correctly applying Federal law, stated the answer to is yes. So Mr. Grenda was arguing that the chart, which is produced by the electrical exam, are just factual charts and that others can look at it and have different opinions. And I understand that. But the results itself should be similar to work product as was held for the testing results in Costa under the same reasoning. This report was a litigation-prepared report. It was not for the purposes of medical diagnosis or treatment, as was argued below. Dr. Preston is not a treating physician. At all times he was employed by the plaintiff and retained by the plaintiff to provide trial testimony and opinions for litigation. So they are not entitled to the report on that basis as well, because it's not a medical record, as this Court held in Dugan v. Weber. This trial-preparation document cannot be relied upon. And if we take it to the extreme, if this Court were to remand for in-camera inspection and the records had to be produced even in a redacted fashion, that would do nothing to resolve the issue of whether Illinois wants to conform itself with or redesignate an expert into a consultant. The other issue is that if the report had to be redacted or produced in a redacted fashion, the defense would still not be able to authenticate that document. Clearly, Dr. Preston would not be subject to a deposition and his opinions would not be able to be shared because he is a consultant under 201B3. The document would essentially be inadmissible hearsay. So the path of least resistance is to affirm the appellate court, which correctly held that this is work product covered by the consultant work product privilege in 201B3, and that the plaintiff was able to timely redesignate Dr. Preston into a non-testifying consultant. Thank you so much. Thank you, Counsel. Mr. Chemers. I made all the noise. Good morning, Your Honors. May it please the Court, Counsel. I argue on behalf of all defendants for rebuttal, Robert Chemers. Follow the majority of the Federal districts. There is nowhere in the plaintiff's brief to suggest that the Federal courts are aligned with respect to redesignation of an expert. Follow the precedent. Follow Federal precedent, we heard from plaintiff's counsel. Federal district court decisions are not precedent. They are not binding on the judge that wrote it. They are not binding on any judge who sits in that district. They are certainly not binding on the Supreme Court of Illinois. Counsel suggests that this Court take the path of least resistance. This is the Supreme Court of Illinois. It makes the law, especially with respect to its own rules. The discovery rules are the Supreme Court rules. With respect to the exceptional circumstances argument this Court heard, that it's the defendant's burden, it's only a defendant's burden to establish exceptional circumstances if the plaintiff established privilege. Plaintiff has not established privilege. We heard plaintiff's counsel say, I count it, four times, the word clearly, clearly to the plaintiff's counsel, because the plaintiff, I looked around this room, is the only one who has seen the report. This Court didn't see it. Judge Gomolinsky at the Circuit Court of Cook County didn't see it. And the appellate court didn't see it. But the appellate court, like the plaintiff, assumed there was privilege, and said a privilege document of a consultant is not produced. This Court can look at Dr. Preston in one of three ways. Consultant under 213F3, which the plaintiff in the brief in this Court said at page 3, 4, 16, 19, and 23, that he was a controlled expert witness. And as the Chief Justice asked, counsel admitted, plaintiff had the report. Plaintiff read the report. The only assumption that can be made from that report is that it didn't favor the plaintiff's position. Otherwise, why redesignate him, if you can even do that? So we have a controlled expert witness that they admit. Bear in mind the answers to those 213F3s were made after three court orders. They were made two days before the testing was performed. They were filed on May 30th, 2017. The test was performed June 1st. Shortly thereafter, they go in on a motion saying the redesignation being attempted was done because he was inadvertently disclosed as an expert, a controlled expert. Inadvertent means careless. That might be, you tell your clerk, it's going to be Dr. Patterson, not Dr. Peterson. There's no issue here with respect to Preston. The 213F3 disclosures were complete. They were detailed. They were factual. They were proper under 213F3. What the plaintiff is asking this Court to do is create an exception. If the report of the controlled expert witness is not produced, then he or she is not a 213F3. They can be called a consultant. That's the second status. Consultant would be privileged, unless there are exceptional circumstances.  It's the plaintiff's burden. The plaintiff did nothing to establish privilege. The plaintiff is the one that should have asked for the in-camera inspection. The defendant didn't have to. We won in the trial court. The trial judge rejected every argument the plaintiff has made to this Court, rejected every argument the plaintiff made to the appellate court, which the appellate court erroneously shifted the burden to the defendant to, in effect, ask for the in-camera inspection, which is wrong. And we'd ask this Court to clear that up. And second, the inadequacy of the record, because the report wasn't in the record, hung the defendant. We're the – we were the appleee. This Court can look at this case and say, we're reversing because the plaintiff brought an inadequate record to the appellate court. All the cases in Illinois that we've come across where an inadequate record is provided, the appellant loses. Not here. Chief Justice Burke asked, does it contain objective data, objective findings? The plaintiff said it contained objective findings at page 5 of the brief she filed in the appellate court. In this court, they dance around it. At page 11 of the brief in this court, plaintiff says it contains mental impressions and thought processes. Well, at a very minimum, if the court reverses, it can reverse outright, saying or it can reverse and remand with directions to have an in-camera inspection, which is what the plaintiff should have asked for initially. In the light of the plaintiff's burden, her admission that the report contained factual evidence and the historically narrow work product privilege, the only assumption for this Court to draw here, if it's going to draw any assumptions, is that the EMG study contains concrete facts which the appellate court assumed, which are unprotected by the work product privilege, that the results of Dr. Preston's study are unfavorable to the plaintiff's case, and that the trial court correctly ordered the plaintiff to produce the study. If the court declines to draw any assumptions in the absence of reviewing the EMG study and this court seldom decides opinions in cases based on assumptions, it can reverse outright because an inadequate record was provided, the plaintiff has not established first that there was a proper redesignation of a controlled expert witness to be a consultant and thereby hide the report, because the report exists. We heard it from plaintiff's counsel. In any event, we're asking this Court to reverse, and we also would suggest to the Court that when it deliberates this case, the standard of review, be it de novo or abuse     of discretion, really doesn't matter, because the appellate court got it wrong and the circuit court got it right. It is de novo with respect to whether it is privileged or not. It is abuse of discretion as to whether it should be produced or not, because the trial judge has broad discretion, great latitude with respect to discovery issues. So it really doesn't matter what standard this Court applies. With respect to the motion to strike, just to strike our brief, we would say at bottom if the Court doesn't like the fact that the brief of appellate in this Court has an appendix, which includes two scholarly articles about EMG testing, then ignore it. You don't have to consider it. However, the plaintiff described EMG testing to the Court as well as Mr. Grant. So the Court is now at least familiar with the basics of what an EMG report does. And the fact that it has hard, concrete facts, objective data, and a report, but also have the doctor's interpretation, they're not the same. One is objective, one is subjective. One might be privileged, one might not be, if he is in fact a consultant. But it's difficult to say he's a consultant, whereas here, five different places of the appellate brief in this Court, the plaintiff admits he was a controlled expert witness. He was a controlled expert witness who went rogue. They didn't like the report. They can't use them. They've got to find a way to protect the report. The best way to do that would be now he's a consultant, even though in the trial court he went from a controlled expert witness to a motion to redesignate, then a motion to reconsider. And in the motion to reconsider, he was said to be a controlled expert witness, but not a treater. And that's the third status. Controlled expert witness, produce the report. Treating physician, produce the report. Consultant, produce that part of the report that's not privileged. However, the Court must go on the premise without seeing the report, there is no privilege because the plaintiff didn't prove the privilege. The defendant doesn't have to. So we would respectfully ask this Court to reverse, or in the alternative to reverse and remand with directions, to conduct the in-camera inspection. Thank you. Is there any questions? Thank you, Your Honor. Thank you, Counsel. Case number 125219, Alex Dameron v. Mercy Hospital, will be taken under advisement as agenda number nine. Thank you, Mr. Grant and Mr. Chambers and Mrs. Herbert. Thank you.